This was an action of assumpsit. The suit commenced by original attachment, returnable to January Term, 1842, of Caswell County Court, and the following facts were agreed upon by the counsel:
Peebles, Hall Co., of Petersburg, Virginia, on 10 July, 1841, drew two bills in favor of Francis E. Rives on the defendant, Sharp, who lived in Danville, Virginia, one payable at ninety days, for the sum of $783.85, the other payable at four months, for the sum of $787.71. The bills were presented after maturity, and accepted by the defendant. At maturity the bills were presented for payment and dishonored. Peebles, Hall 
Co., after protest for nonpayment, took up the bills and paid off the same to Rives. The defendant had property, both real and personal, in North Carolina, which Peebles, Hall Co., wished to subject to attachment, and, in order to do so, on 10 December, 1841, indorsed the (418) bills, without consideration to the plaintiff, who was a citizen of Caswell County, North Carolina, and who, immediately upon the assignment to him, sued out the attachment which is the original process in the case. The defendant replevied the property attached, and pleaded to the action the general issue, etc. It was further agreed that the defendant had been for some years before the suing out of the attachment a citizen of Virginia, where he resided when the attachment was taken out, and that he had not left this State secretly, fraudulently, or with a design to avoid the ordinary process of law. Upon this statement of facts, his Honor was of opinion that the law was with the plaintiff, and so instructed the jury, who returned a verdict for the plaintiff. A new trial having been moved for and refused, and judgment rendered according to the verdict, the defendant appealed.
This is an action of assumpsit on two bills of exchange by the plaintiff as an indorser of Peebles, Hall Co., against the acceptor. The bills were drawn on 10 July, 1841, by Peebles, Hall Co., of Petersburg, in Virginia, in favor of F. E. Rives, on the defendant Sharp, of Danville, in Virginia, who accepted them, but failed to pay them when they fell due. The one was for $783.85 at ninety days, and the other for $787.71 at four months from date. Upon the failure of Sharp, the payee, Rives, returned the bills to the drawers, Peebles, Hall Co., for payment, and they accordingly paid him and took up the bills. On 10 December, 1841, Peebles, Hall Co. indorsed the bills to the present plaintiff, who resides in Caswell in this State, and immediately commenced this action by original attachment levied on the estate of the defendant situate in Caswell. The indorsement from Peebles, Hall Co. to the plaintiff was without consideration, and was made for the purpose of enabling Price to take out an attachment in his name for the (419) benefit of Peebles, Hall Co., and the present action was accordingly brought for their use. Upon the return of the attachment the defendant gave bail, and appeared and pleaded, first, nonassumpsit, and, secondly, by way of special plea in bar, the facts stated respecting the indorsement and the purpose of it. Upon the trial the facts were agreed upon as here stated, and upon them his Honor was of opinion for the plaintiff, and so instructed the jury, who found a verdict accordingly, and from the judgment the defendant appealed.
For the defendant it has been insisted that the plaintiff cannot maintain this action, commenced by original attachment, because it is not brought for his own benefit, but in evasion and fraud of the act of 1777, for that of Peebles, Hall Co., who could not have brought it in their own names, according to Broghill v. Welborn, 15 N.C. 511. Whether this objection be valid or not, if taken in apt time, it is now necessary to say; for, if good, it comes too late. Undoubtedly the holder of a bill may indorse it to another, in trust for himself, or to collect as his agent, and the indorsee may have an action against the acceptor of the bill. The objection is not, therefore, that this plaintiff could not maintain assumpsit on these bills, but that he cannot commence that action by attachment, but should have done it by capias. The imputed defect lies in the writ, and the answer is obvious that, by accepting the declaration and pleading to it, the party waives all defects in the process. This point should have been raised by a plea in abatement or in some other method before pleading in bar.
But in the opinion of the Court there is another objection to the plaintiff's recovery which has more force. It is that the bills could not be put into circulation by the indorsement of Peebles, Hall Co., after those persons had paid them to Rives. If Rives' name had been put on the *Page 297 
bills, the case of Beck v. Robley, 1 H. Bl., 89, is a direct authority against this action. In that case a bill was drawn by Brown on Robley, payable to Hodgson or order. Hodgson put his name on the bill, and, not being paid when due, Hodgson, without striking out his blank indorsement, returned the bill to Brown, and he took it up, and afterwards passed it to Beck, who brought the action. It was held that when (420) the bill came back unpaid, and was taken up from the payee by the drawer, it ceased to be a bill; for it could not then be negotiated by him without making Hodgson liable thereon, for which there was no color. Between that case and the present there is but one point of difference, and that but increases the difficulties in the plaintiff's way. Hodgson's name was on the bill when he returned it to Brown; whereas it does not appear that Rives ever put his name on these bills, and it cannot be assumed that he did. But, waiving that for the present, the case cited is conclusive for the defendant, even if Rives' indorsement were on the bills. The counsel for the plaintiff, however, opposes to that case the more recent one of Callow v. Lawrence, 3 Maule and Selwyn, 95, and the language there used by Lord Ellenborough, "That a bill of exchange is negotiable ad infinitum until it has been paid by or discharged in behalf of the acceptor; and that if the drawer has paid the bill, it seems he may sue the acceptor on the bill; and if, instead of suing the acceptor, he put it into circulation upon his own indorsement only, it does not prejudice any of the other parties who may have indorsed the bill, that the holder should be at liberty to sue the acceptor." But it seems to us that neither the case itself nor the doctrine here quoted, when correctly understood, shakes the principle of Beck v. Robley, but rather sustains it. No one can deny that a bill is negotiable indefinitely until payment. But the question is, By whom may it be negotiated? Why, by the payee or by any person entitled under his indorsement; and the acceptor will be as much bound to pay it to such indorse, however remote, as he was to the payee himself, before he indorsed it. But it does not follow that the drawer of a bill, who takes it up, after dishonor, from the payee, is to be considered the indorsee of the payee. Far from it; for, instead of claiming from the payee under him, he was, in truth liable on it to the payee, in default of the acceptor, and in discharge of that liability took it up. Then he could not look to the payee to make the bill good to him, and by consequence, he could not by his subsequent indorsement give to his indorser the right to recourse against the payee. But as that would be the necessary effect of such (421) indorsement, if allowed at all, it resulted that in such a case the law would not allow the drawer again to put the bills into circulation. That the payee suffered his name to remain on the bill when he returned it will not be an authority to the drawer to negotiate it; for it was not left *Page 298 
there to give credit to the bill with the drawer, or, in other words, as an indorsement, but merely as a receipt for the amount paid by the drawer,animo solvendi. After such payment it would be unjust to the payee to allow the drawer to pass the bill on the responsibility of the former; and, therefore, he is not permitted to pass it at all. With this reasoning the passage quoted from Lord Ellenborough consists. In Callow v. Lawrence
the bill was not, as here and in Beck v. Robley, payable to a third person, but was payable to the drawer's order. After acceptance the drawer indorsed it, and it went through several hands, and was finally returned to the drawer by a holder, who struck out all indorsements after that of the drawer, and received payment from him, and then the drawer passed the bill to Callow; and it was held that the latter might maintain his action against the acceptor. A bill payable to the drawer's order, when accepted, becomes substantially a promissory note from the acceptor to the drawer, being an express promise to pay the drawer or his assigns. When it comes back to the drawer, he is remitted to his original rights upon an instrument payable to himself, and may sue on it, without noticing indorsements that had been made of it. Doak v. Caswell,2 N.C. 18; Strong v. Spear, ib., 214; Callow v. Lawrence 3 M. and S., 95. It would seem to follow, necessarily, that the drawer might again indorse it; for in so doing he passes the instrument regularly according to its face, and leaves no one liable to his indorsee but himself and the acceptor, each of whom ought thus to be liable. Gomez Serra v. Berkeley, 1 Wils., 46, and Guild v. Eager, 1 Mass. 615. Upon this distinction between bills payable to a third person, on the one hand, and a promissory note or bill payable to the drawer's order, on the other, are (422) obviously founded the observations of Lord Ellenborough in the case cited. He admits the authority of Beck v. Robley, and carefully confines his rule to the case then before him, that is to say, of a bill payable to the drawer's order, by saying that "If, instead of suing the acceptor, he (the drawer) put the bill into circulation upon his own
indorsement only, the holder might sue the acceptor," which can apply to no case but that of a bill payable to the drawer's order or to a promissory note. Then he immediately proceeds to declare, further, that "The case would be different if the circulation of the bill would have the effect of prejudicing any of the indorsers," as in Beck v. Robley was the case. The other judges place the matter in a still clearer light. Le Blanc, J., said: "There was in Beck v. Robley no color to charge Hodgson, and, striking out Hodgson's indorsement, the bill could not possibly be negotiable." And Bagley, J., who is high authority upon a point of this kind, states the distinction very shortly and happily by saying that "InBeck v. Robley payment by Brown struck out the indorsement of Hodgson, whereas the payment by Pywell (the drawer in Callow v. Lawrence) *Page 299 
did not, in legal effect, strike out Pywell's own indorsement, so as to render the bill no longer negotiable." Thus those two cases stand well together. The principle of Beck v. Robley is that which governs this case, and is, that a person cannot negotiate paper when by so doing he would render responsible on it another person, from whom he had taken it up, under a prior responsibility; while the principle of Callow v. Lawrence is that a person who takes up paper once due to himself may again put it into circulation, provided that, in so doing, he exposes no person to a prejudice but himself or those who are legally and justly liable on the paper before him.
In considering the case hitherto, it has been treated as if Rives had put his name on the bills; in which case, even, we have seen that the law is against the plaintiff. But that fact is otherwise here, or, at least, does not appear, which is the same thing. In Beck v. Robley the plaintiff, no doubt, did sue as the indorsee of Hodgson, the payee; so that he had apparently a regular title to the bill. But this plaintiff declares, not as the indorsee of Rives, but upon the indorsement of Peebles, (423) Hall Co., which is certainly bad. No person can acquire a title to a bill payable to the order of Rives, but by the order of Rives. When he gave it back to Peebles, Hall Co. without his indorsement, it was dead to all intents and purposes as a negotiable instrument. In the words of Mr. Justice Le Blanc, "striking out the payee's indorsement, the bill could not possibly be negotiated." The indorsement to the plaintiff was a nullity, and he cannot maintain any action on the bills.
PER CURIAM. New trial.
Cited: Howell v. McCracken, 87 N.C. 402.
(424)